FILED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

AMERICAN REGISTRY FOR INTERNET
NUMBERS, LTD.
3635 Concorde Parkway, Suite 200
Chantilly, Virginia 20151,

                              Plaintiff,

                vs.

THE INTERNET GROUP, INC.
2719 Shady Creek
Pearland, Texas 77581

and

PECOS TECHNOLOGIES, INC.
710 North Post Oak Road, Suite 104
Houston, Texas 77024-3856,

                              Defendants.

Civil Action No. 1:07CV1263
JCC /TCB

**COMPLAINT**

Plaintiff American Registry For Internet Numbers Ltd. ("ARIN"), by and through its

undersigned counsel and for its Complaint against defendants The Internet Group, Inc., ("IG")

and Pecos Technologies, Inc. ("Pecos") (IG and Pecos collectively, "Defendants"), alleges as

follows:

### THE PARTIES

1.     ARIN is a non-profit corporation organized and existing under the laws of

Virginia, with its primary place of business at 3635 Concorde Parkway, Suite 200, Chantilly,

Virginia 20151. ARIN allocates Internet Protocol resources and performs other services related

to the operation and advancement of the Internet.

2.     On information and belief, defendant IG is a Texas corporation, with its primary place of business at 2719 Shady Creek, Pearland, Texas 77581.  On information and belief, IG offers Internet Service Provider ("ISP") services to individuals and companies, including residents of this district.  On information and belief, IG has done business under various business aliases, including but not limited to:  ISDLOnline,  FNP Corp, and Pecos.

3.     On information and belief, defendant Pecos was a Texas Corporation.  Pecos' last known address is 710 North Post Oak Road, Suite 104, Houston, Texas 77024-3856.  On information and belief, Pecos is no longer a corporate entity, or may be operating as an assumed name of IG.  On information and belief, Pecos offers ISP services to individuals and companies, including residents of this district.  On information and belief, Pecos did business under various business aliases, including NetOne.

## NATURE OF THE ACTION

4.     This is an action for breach of contract, defamation and fraud under the statutes and common laws of Virginia, arising from Defendants' attempts to fraudulently obtain, keep control of and improperly transfer Internet Protocol ("IP") numbers issued by Plaintiff, and from Defendants' false and malicious statements against ARIN.

## JURISDICTION AND VENUE

5.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1332.  Plaintiff is organized and existing under the laws of the Commonwealth of Virginia, while on information and belief, each of the defendants is organized and existing under the laws of the State of Texas.

6.     Defendants are subject to personal jurisdiction in this Court pursuant to Va. Code Ann. §8.01-328.1(A)(1) & (2), because:

(a)  IG has transacted business with ARIN located within this district; and

(b) Pecos has transacted business with ARIN located within this district.

7.      Further, based upon information and belief, each Defendant has contracted to supply services or things in the Commonwealth of Virginia, including within this district.

8.      The current cause of action arises from the above activities.  Venue is proper in this district under 28 U.S.C. § 1391.

9.      This Court has personal jurisdiction over Defendants and venue is proper in this district because, *inter alia*, on information and belief:

(a) Each Defendant conducts business in this district;

(b) Defendants' acts giving rise to the claims set forth herein occurred in this district; and

(c) witnesses and records, are located in this district.

## FACTS ENTITLING PLAINTIFF TO RELIEF

### Plaintiff And Its Vital Role In The Internet

10.      Every device that is linked to the Internet needs an IP number.  This number serves as the device's Internet "address" so that Internet communications can be routed to and from the device.  An IP number is conceptually analogous to a telephone number in so far as ARIN allocates an IP number pursuant to a service agreement, much like the telephone company allocates telephone numbers.

11.      For example the IP number 72.21.210.11 is the address for the website Amazon.com.  The domain name, Amazon.com, is simply the more memorable way to locate that address on the Internet.

12.     IP address space is finite. Because of the success of the Internet, IP numbers (also referred to as "IP Addresses") have become increasingly scarce. It is important that the limited number of available IP addresses are used prudently and efficiently.

13.     To maintain globally unique IP addresses and conserve the finite number of them, the United States' federal government established a system for allocating and managing these addresses early on. While the federal government previously performed this role, it is now handled by Regional Internet Registries (RIRs). ARIN is one of five RIRs worldwide and is responsible for allocating all IP addresses in its geographic region, which includes the United States and Canada.

14.     ARIN has adopted specific guidelines and policies ("Guidelines"), which are posted at http://www.arin.net/policy/nrpm.html. The Guidelines are based upon the fundamental policy proposition that IP numbers remain within the sole administrative control of ARIN. IP addresses that ARIN allocates to registrants do not become the "property" of those registrants, but remain under ARIN's authority and control.

15.     IP numbers are not pieces of property. Currently, Registrants may not sell IP numbers they have been allocated and may not transfer them without ARIN's review and consent.

16.     Applicants must apply for allocation of IP numbers. If ARIN approves an application, the Resources will be assigned to the applicant, but only after the applicant signs and agrees to be bound by the terms of ARIN's Registration Services Agreement ("RSA").

17.     Among other things, the RSA specifies that: (a) IP numbers do not become the property of the registrant; (b) that ARIN has the right to revoke the allocation of IP numbers if the registrant is not using them for their intended purpose; (c) ARIN has the right to terminate

- 4 -

and/or revoke the IP Numbers if the service fee is not paid; (d) applicant must provide complete, accurate and up to date information about applicant; and (e) the registrant agrees to be bound by ARIN's Number Resource Policy Manual, Certificate Practice Statement, and Guidelines (collectively, the "Policies"), as these may be amended from time to time.

## Background

18.     At the heart of this case are three sets of IP numbers:  (i) 209.152.128.0/19 (the "NetOne Resources"); (ii) 66.55.64.0/19 and AS29987 (the "IDSLOnline Resources"); and (iii) 64.8.96.0/19 and 63.245.192.0/20 (the "FNP Resources")

### The NetOne Resources

19.     On October 25, 2006, an entity identifying itself as "NetOne" signed an RSA with ARIN for the NetOne Resources.  The applicant indicated that "NetOne" was both its legal name and its "d/b/a."

20.     At the time NetOne entered into the RSA, "NetOne" was a registered assumed name of Pecos in the State of Texas and Harris County, Texas.  Pecos did not disclose these facts to ARIN at any point during the application process.

21.     On February 26, 2007, another company, called USColospace.com, Inc. (a Kansas corporation), applied to transfer the NetOne Resources from "Pecos Technologies, d/b/a NetOne," to USColospace.com.

22.     ARIN began its review of the transfer request.  As part of this review, ARIN attempted to determine how USColospace.com had obtained control over the NetOne Resources.

23.     USColospace.com provided ARIN with a bill of sale effective on February 1, 2007, transferring, *inter alia*, the NetOne Resources from Net One d/b/a Pecos Technologies [sic] to USColospace.com, Inc.

- 5 -

24.     A representative of USColospace.com advised ARIN that the bill of sale should have read "Pecos Technologies d/b/a Net One."

25.     ARIN received, in connection with another requested transfer, an asset purchase agreement dated November 1, 2006 (the "Purchase Agreement"), between IG and a company called Trip.Net, Inc.  Among the assets Trip.Net obtained under the Purchase Agreement were several fictitious business names, including "Pecos Technologies," "IDSLOnline," "NetOne" and "Net1.net."

26.     On October 10, 2006, Trip.Net Inc. registered "Net One" as an assumed name in Harris County, Texas.

27.     A representative of USColospace.com stated to ARIN that U.S.Colospace.com now owned Pecos Technologies, d/b/a Net One, and that Trip.Net was only given a right to use the fictitious business name "Net One" by the Purchase Agreement.

28.     USColospace.com provided ARIN with a letter from Robert Teir of Boenig & Teir law firm, acting as counsel for IG.  The letter, dated May 19, 2007, stated:

> This letter is to confirm that a group of IP addresses, listed under Ticket no. 22070226.1077 and IP Block 209.152.128.0/19 has been transferred by the Pecos Technology, Inc., [sic], via idba NetOne to USColospace, Inc. [sic].

> The seller of these IP addresses and related assets acknowledges this sale, intends for this sale to go forward.

> The Internet Group, similarly does not dispute the transfer, and make [sic] no claim as to transfer of this resource.

29.     The May 19 letter was signed by Mr. Teir and countersigned by Salim G. Zakhem for Trip.net and Andrew Amend for USColospace, Inc. [sic].

30.     ARIN was not able to verify that the assets supporting allocation of the NetOne Resources were transferred in accordance with the RSA and the Policies.

- 6 -

31.     On August 22, 2007, ARIN issued Invoice No. SI084914 to Net One, in the amount of $2,250, for the annual fees for the NetOne Resources. Payment was due on October 26, 2007.

32.     The annual fees were not paid by the due date.

33.     ARIN advised USColospace.com on November 13, 2007, that ARIN could not approve transfer of the NetOne Resources. ARIN also advised USColospace.com that because the current registrant, NetOne, did not appear to legally exist, ARIN was revoking the NetOne Resources and returning them to the available pool. USColospace.com was invited to apply for allocation of IP addresses in its own name.

34.     On November 26, 2007, ARIN received an email from someone calling himself "hostmaster@uscolospace.com," requesting that ARIN change its decision regarding the NetOne Resources.

35.     At about the same time, IG and Pecos, represented by Mr. Robert Teir claimed that ARIN's revocation of the NetOne Resources was wrongful and threatened legal action unless the NetOne Resources were "restored" to his clients, namely IG and/or Pecos. IG and/or Pecos does not have standing to make such a claim.

36.     According to the documentation submitted by USColospace.com, IG or Pecos sold business assets to USColospace.com.

37.     ARIN repeatedly attempted to contact USColospace.com to determine its continued claim to control the NetOne Resources. USColospace.com did not respond.

38.     Mr. Teir did not represent USColospace.com.

39.     Pecos obtained the NetOne Resources fraudulently by applying for the Resources under an assumed name rather than its legal name.

40.    Pecos breached its RSA with ARIN by selling the RSA and the NetOne Resources in violation of the RSA.

41.    Pecos breached its RSA with ARIN by failing to pay the annual fees for the NetOne Resources.

### The IDSLOnline Resources

42.    The IDSLOnline Resources were originally allocated to a company called National Resource Center pursuant to an RSA dated July 3, 2003.

43.    On October 7, 2003, IDSLOnline applied to have the IDSLOnline Resources transferred from National Resource Center to IDSLOnline.  That transfer was approved, and an entity identified as "IDSL" became the record holder of the IDSLOnline Resources.

44.    On May 12, 2005, ARIN issued Invoice No. SI049233 to IDSLOnline in the amount of $2,000, for the 2005 annual fees for the IDSLOnline Resources.  These fees were not paid.

45.    On May 22, 2006, ARIN issued Invoice No. SI065166 to IDSLOnline in the amount of $2,250, for the 2006 annual fees for the IDSLOnline Resources.  These fees were not paid.

46.    On January 4, 2007, ARIN received a request to transfer the IDSLOnline Resources from their holder of record, IDSLOnline, to Trip.Net, Inc.

47.    ARIN received a copy of the Purchase Agreement, under which Trip.Net obtained several fictitious business names from IG, including "IDSLOnline."

48.    ARIN was provided with a letter from Robert Teir, acting as counsel for IG.  The letter, dated May 19, 2007, stated:

This letter is to confirm that a group of IP addresses, listed under Ticket no. 20061227.4842 and IP Block 66.55.64.0/19, has been transferred by the Internet

Group, Inc., via idba, IDSLONLINE (IDSLO), to Trip.Net, Inc. TRIP, the buyer
has doing-business names that include Net 1.

The seller of these IP addresses and related assets acknowledges this sale, intends
for this sale to go forward.

The Internet Group, similarly does not dispute the transfer, and make [sic] no
claim as to transfer of this resource.

49.     This May 19, 2007 letter was signed by Mr. Teir and countersigned by Salim G.

Zakhem for Trip.net and Ernesto G. Haberli for IG.

50.     Trip.Net did not provide ARIN with information regarding how the IDSLOnline

Resources were transferred to the control of IG.

51.     ARIN advised Trip.Net on November 13, 2007, that ARIN could not approve

transfer of the IDSLOnline Resources. ARIN also advised Trip.Net that because the current

registrant, IDSLOnline, did not appear to legally exist, ARIN was revoking the IDSLOnline

Resources and returning them to the available pool. Trip.Net was invited to apply for allocation

of IP addresses in its own name.

52.     To date, the Defendants have not paid Invoice Nos. SI049233 and SI065166.

53.     IG or IDSLOnline breached its RSA with ARIN by failing to pay the annual fees

for the IDSLOnline Resources.

54.     IG or IDSLOnline breached its RSA with ARIN by transferring the IDSLOnline

Resources in violation of the RSA.

<u>The FNP Resources</u>

55.     On October 16, 2003, a company called Argonet entered into an RSA for the FNP

Resources.

56.     ARIN received a request to transfer the FNP Resources from Argonet to FNP

Corp. on March 30, 2004.

57.     On August 16, 2004, ARIN issued Invoice No. SI038312 to FNP Corp. in the amount of $4,500, for the 2004 annual fees for the FNP Resources.  This invoice has never been paid.

58.     FNP Corp. provided ARIN with a copy of a stock purchase agreement dated March 1, 2003,  under which FN Publishing, Inc., a/k/a FNPCO, purchased all stock of Argonet.

59.     On September 15, 2003, Argonet filed a Public Interest Report with the State of Texas, which listed Houston Shipping, Inc. as 100% owner of Argonet.  This report contradicts the purchase agreement of March 1, 2003.

60.     ARIN approved the transfer of the FNP Resources to FNP Corp., and on April 30, 2004, FNPCO entered into an RSA with ARIN.

61.     At the time ARIN approved the transfer, ARIN was unaware that Houston Shipping, Inc. owned Argonet.

62.     On August 17, 2005, ARIN issued Invoice No. SI054739 to FNP Corp. in the amount of $4,500, for the 2005 annual fees for the FNP Resources.  This invoice has never been paid.

63.     On August 24, 2006, ARIN issued Invoice No. SI068766 to FNP Corp. in the amount of $4,500, for the 2006 annual fees for the FNP Resources.  This invoice has never been paid.

64.     On January 4, 2007, ARIN received a request to transfer the FNP Resources from FNPCO to Trip.Net, Inc.

65.     ARIN received a copy of the Purchase Agreement, under which Trip.Net obtained several fictitious business names from IG, including "FNP Corp."

66.    Trip.Net did not provide ARIN with information regarding how the FNP Resources were transferred to the control of IG.

67.    ARIN was provided with a letter from Robert Teir, acting as counsel for IG.  The letter, dated May 19, 2007, stated:

> This letter is to confirm that a group of IP addresses, listed under Ticket no. 20061227.4843 and IP Block 64.8.96.0/19 and IP Block 63.245.192.0/20 has been transferred by the Internet Group, Inc., via idba, FNPCorp. to Trip.Net, Inc.

> The seller of these IP addresses and related assets acknowledges this sale, intends for this sale to go forward.

> The Internet Group, similarly does not dispute the transfer, and make [sic] no claim as to transfer of this resource.

68.    This May 19 letter was signed by Mr. Teir and countersigned by Salim G. Zakhem for Trip.net and Ernesto G. Haberli for IG.

69.    Trip.Net did not provide ARIN with information regarding how the FNP Resources were transferred to the control of IG.

70.    ARIN advised Trip.Net on November 13, 2007, that ARIN could not approve transfer of the FNP Resources.  ARIN also advised Trip.Net that because the current registrant, FNPCO, did not appear to legally exist, ARIN was revoking the FNP Resources and returning them to the available pool.  Trip.Net was invited to apply for allocation of IP addresses in its own name

71.    IG or FNP Corp. breached its RSA with ARIN by failing to pay the annual fees for the FNP Resources.

72.    IG or FNP Corp. breached its RSA with ARIN by transferring the FNP Resources in violation of the RSA.

73.    At some time after ARIN revoked the Resources, a website believed to be under the control of the Defendants displayed the following text on its publicly available homepage at

www.avidhosting.com: "Avidhosting is not out of business. arin.net has unrouted our IP addresses. While we address the issue, if you have a complaint you can call the phone number +1.703.227.0660." The webpage also provided ARIN's email address and fax number.

74.     Avidhosting's statement that ARIN had unrouted its IP addresses was false. ARIN does not route IP addresses to particular domain names.

75.     As a result of Avidhosting's statement, ARIN was flooded with phone calls from angry customers of Avidhosting. ARIN dedicated many employees to answer these phone calls full time for several days.

76.     ARIN's reputation has been damaged by Avidhosting's false statement and its implication that ARIN acted wrongly with respect to the Resources.

## COUNT I
## Breach of Contract

77.     ARIN incorporates Paragraphs 1-76 by reference as though fully set forth herein.

78.     ARIN entered into an RSA with an entity called, "NetOne." (the "First Contract").

79.     ARIN provided services and allocated certain resources pursuant to the First Contract.

80.     Without ARIN's permission and contrary to the terms of the contract, the Defendants breached the RSA by assigning the resources to a third-party.

81.     The Defendants breached the RSA by failing to pay the annual renewal fee.

82.     ARIN has been damaged by said breaches.

## COUNT II
### Breach of Contract

83.     ARIN incorporates Paragraphs 1-82 by reference as though fully set forth herein.

84.     ARIN entered into an RSA with an entity called, "FNP Corp." (the "Second Contract").

85.     ARIN provided services and allocated certain resources pursuant to the Second Contract.

86.     Without ARIN's permission and contrary to the terms of the Second Contract, the Defendants purchased the RSA and obtained control over the resources.

87.     Without ARIN's permission and contrary to the terms of the Second Contract, the Defendants breached the RSA by assigning the contract and the resources to a third-party.

88.     The Defendants breached the Second Contract by failing to pay the annual renewal fees that became due over each of four years.

89.     ARIN has been damaged by said breaches.

## COUNT THREE
### Breach of Contract

90.     ARIN incorporates Paragraphs 1-89 by reference as though fully set forth herein.

91.     ARIN entered into an RSA with an entity called, "IDSLOnline." (the "Third Contract").

92.     ARIN provided services and allocated certain resources pursuant to the Third Contract.

93.     Without ARIN's permission and contrary to the terms of the Third Contract, the Defendants purchased the RSA and obtained control over the resources.

94.     Without ARIN's permission and contrary to the terms of the Third Contract, the Defendants breached the RSA by assigning the contract and the resources to a third-party.

95.     The Defendants breached the Third Contract by failing to pay the annual renewal fees that became due over each of three years.

96.     ARIN has been damaged by said breaches.

## COUNT FOUR
### Defamation

97.     ARIN incorporates Paragraphs 1-96 by reference as though fully set forth herein.

98.     The Defendants posted upon a website under their control false statements about ARIN.

99.     The Defendants statements were malicious and known to be false.

100.    The Defendants statements were intended to cause harm to ARIN.

101.    As a result of Defendants false statements, ARIN received telephone calls from internet users.

102.    As a result of Defendants' false statements, ARIN's reputation was damaged and it suffered damages as a result of the false statements.

## COUNT FIVE
### Fraud

103.    ARIN incorporates Paragraphs 1-102 by reference as though fully set forth herein.

104.    In order to assign and transfer resources, contrary to ARIN's Policies, the Defendants created sham and fraudulent transactions to disguise the sale of the resources.

105.    In order to obtain ARIN's consent to the transfer of resources, the Defendants filed with ARIN, or caused to be filed, false documents for the purpose of intentionally deceiving ARIN.

106.   In order to obtain ARIN's consent to the transfer of resources, the Defendants made false statements to ARIN, or caused false statements to be made, for the purposes of intentionally deceiving ARIN.

107.   In order to avoid ARIN's investigation of the sham transactions, the Defendants willfully and fraudulently concealed material facts and hindered the acquisition of information.

108.   ARIN relied on the false documents and information.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court grant the following relief:

(A)   A declaration that the Defendants breached the RSA by failure to pay the service fees.

(B)   A declaration that the Defendants breached the RSA by selling and assigning Resources.

(C)   A declaration that the Defendants defamed ARIN.

(D)   A declaration that ARIN does not have any contractual obligations to the Defendants.

(E)   A declaration that ARIN does not have any obligations to the Defendants.

(F)   A declaration that ARIN has not caused either of the Defendants any damages for which ARIN is legally liable.

(G)   An award of the services fees which the Defendants owe for their use of the Resources.

(H)   An award of any damages caused by the Defendants defamation of ARIN ARIN's revocation of the allocation of the Resources to NetOne did not violate any rights of either of the Defendants.

(I)     An award of Plaintiff's costs and expenses, including, without limitation,

reasonable attorneys' fees; and

(J)     All other relief, in law or in equity, to which Plaintiff may be entitled, or which

the Court deems just and proper.

Respectfully submitted,

Dated:  December 18, 2007

Sarah Brown
Va. Bar No. 67989
Karla L. Palmer
Va. Bar No. 34267
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, D.C.  20005-3096
(202) 756-8142
(202) 756-8087
sabrown@mwe.com

**Counsel for Plaintiff American Registry
For Internet Numbers Ltd.**

**Of Counsel:**

Stephen M. Ryan
Melise R. Blakeslee
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, D.C.  20005-3096
(202) 756-8000
(202) 756-8087

WDC99 1501311-4.077793.0010

- 16 -